813 F.2d 1228
 2 U.S.P.Q.2d 1237
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
PIERCE FOODS CORP., Plaintiff-Appellant,
v.
CONAGRA CONSUMER FROZEN FOODS COMPANY, d/b/a Banquet Foods
Co., Peavey Co.; Giant Foods Inc., Defendant-Appellees.
 No. 86-2119.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1987.
Decided March 10, 1987.
 
 Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia sitting by designation.
 Laurence Ray Brown (James F. Browne, on brief), for appellant.
 Richard H. Compere (Willian, Brinks, Olds, Hofer, Gilson & Lione Ltd., on brief), for appellees.
 PER CURIAM:
 
 
 1
 The Pierce Foods Corporation brought this action for trademark infringement under the Lanham Trademark Act[1] and the Virginia common law against ConAgra, Inc.; Peavey Company, d/b/a Banquet Foods Company; and Giant Foods, Inc. It appeals from a judgment of the district court against it in favor of all of the defendants. Pierce has packaged and sold pre-cooked frozen chicken wing products under the designation "WING DINGS" since 1964. Food distributors in 43 states resell the chicken wings primarily to institutional purchasers such as restaurants, hospitals, and airlines. Pierce was granted a trademark designation for "WING DINGS" in 1966 (the "i" in DINGS is upside down under this designation). The registration has been granted incontestability status. Banquet Foods Company is a division of Peavey, which is a wholly-owned subsidiary of ConAgra. Banquet has been trading in the frozen food business for approximately forty years with retail sales constituting 95% of its business. In May of 1985, Banquet developed an advertisement for a new line of frozen TV dinners containing chicken wings. The ad bore the headline "Cook up a wing-ding!" It ran in sixty newspapers across the country on September 29, 1985, and contained a coupon redeemable for any one of 35 different frozen dinners sold by Banquet. One of these coupons was redeemed at a Giant Food store in Arlington, Virginia.
 
 
 2
 The district court found the above facts and also found that no one involved in developing the Banquet advertisement was aware of the use or registration of the designation "WING DINGS., by Pierce. It also found that the term was proposed by the Banquet advertising agency and was used in the sense of its dictionary definition of "wild, lively, or lavish party."
 
 
 3
 The district court correctly considered the criteria for determining whether there was a likelihood of confusion between the term wing-ding as it was used in Banquet's single advertisement and Pierce's trademark. Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 648 (6th Cir. 1982); see Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984); Durox Co. v. Duron Paint Manufacturing Co., 320 F.2d 882 (4th Cir. 1963).
 
 
 4
 It found that Pierce's trademark was weak; that the goods involved in this case are similar; that the word in the advertisement and the trademark are similar; that there was no evidence of actual confusion resulting from Banquet's use of the phrase "Cook up a wing-ding!"; that Pierce and Banquet marketed and advertised through different channels; that there was no evidence bearing on the lack of purchaser care; that Banquet had no intent to promote its product by taking advantage of the Pierce trademark; and that the likelihood of Pierce's expanding its product line in the retail market was speculative at best.
 
 
 5
 In view of all this, the district court concluded there was no likelihood of confusion. We cannot say that the district court was clearly erroneous. Pizzeria Uno, 747 F.2d at 1526.
 
 
 6
 The judgment of the district court is therefore affirmed.
 
 
 7
 AFFIRMED.
 
 
 
 [1]
 15 U.S.C. Sec.lll4(1)